**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOY VIDA JONES, ESQ., <br><br> Plaintiff, <br><br> v. <br><br> LANDRY'S, INC., PALM MANAGEMENT CORP., and JUST ONE MORE RESTAURANT CORP., <br><br> Defendants. | **Civil Action No.** <br> **1:23-cv-09920-GHW-JW** |

**MEMORANDUM OF LAW IN SUPPORT OF LANDRY'S LLC D/B/A LANDRY'S, INC. (F/K/A LANDRY'S INC.) AND PALM MANAGEMENT CORP.'S MOTION TO DISMISS OR TO COMPEL ARBITRATION**

**FOX ROTHSCHILD LLP**
101 Park Avenue, 17th Floor
New York, New York 10178
(212) 878-7900
(212) 692-0940 (fax)

*Attorneys for Defendants*
*Landry's LLC d/b/a Landry's, Inc.*
*(f/k/a Landry's Inc.) and*
*Palm Management Corp.*

<u>Of Counsel:</u>

Carolyn D. Richmond, Esq.
Alexander W. Bogdan, Esq.
Devin S. Cohen, Esq.

157104175.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 2

    A.    The Parties ................................................................................. 2

    B.    Plaintiff's Allegations Concerning Her Contractual Relationship With Palm Management ............................................................................ 2

    C.    Plaintiff's Allegations Concerning Alleged Race Discrimination .......................... 4

        1.    Plaintiff's Allegations Regarding Conduct From January 2018 Through February 2019. ......................................................... 4

        2.    Plaintiff's Allegations Regarding Conduct From January 2020 Through March 2020. ........................................................... 7

LEGAL STANDARD APPLICABLE TO MOTION TO DISMISS ....................................... 8

    I.    PLAINTIFF'S SECTION 1981 CLAIMS MUST BE DISMISSED. ................ 9

        A.    Plaintiff's Allegations That Pre-Date November 9, 2019 Are Time-Barred. ................................................................................... 9

        B.    Plaintiff Fails To State A Claim For Discrimination Under Section 1981 ................................................................................... 9

            1.    Plaintiff Fails To Allege Any Adverse Employment Actions Prior To Her March 2020 Termination. ................................................. 11

            2.    Plaintiff Has Failed To Allege That She Was Terminated Because Of Her Race. ..................................................................... 12

        C.    Plaintiff Fails To State A Claim For Retaliation Under Section 1981. .... 15

    II.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIM. ..................................................................................... 17

    III.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT BECAUSE THERE WAS NO EMPLOYMENT AGREEMENT AT THE TIME OF THE ALLEGED BREACH… .............. 17

    IV.    ANY CLAIMS NOT DISMISSED FOR FAILURE TO STATE A CLAIM MUST BE COMPELLED TO ARBITRATION. ............................. 20

        A.    The FAA Governs Plaintiff's Agreement To Arbitrate. ........................... 20

B.     Arbitration Should Be Compelled. ........................................................ 21

      1.     The Parties Agreed To Arbitrate. ................................................... 21

      2.     Plaintiff's Claims Fall Within The Scope Of The Arbitration Provision And Must Be Arbitrated. ............................................... 22

      3.     Plaintiff's Statutory Claim Is Subject To Arbitration. ................. 22

C.     This Action Should Be Dismissed In Its Entirety or Stayed Pending Arbitration. ........................................................................................... 23

**CONCLUSION** ....................................................................................................... 24

157104175.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A Great Choice Lawncare & Landscaping, LLC v Carlini*,
    167 A.D.3d 1363, 91 N.Y.S.3d 575 (3d Dep't 2018) ............................................................19

*Albert v. Carovano*,
    851 F.2d 561 (2d Cir. 1988) ................................................................................................10

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006) ................................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................8

*Banks v. Gen. Motors, LLC*,
    81 F.4th 242 (2d Cir. 2023) ..................................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................8

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*,
    778 F. Supp. 2d 375 (S.D.N.Y. 2011) .................................................................................19

*Brightman v. Physician Affiliate Grp. of New York, P.C.*,
    No. 20-cv-4290, 2021 WL 1999466 (S.D.N.Y. May 19, 2021) ..........................................15

*Brown v. Orange & Rockland Util., Inc.*,
    594 F. Supp. 2d 382 (S.D.N.Y. 2009) .................................................................................16

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ............................................................................................................17

*Chen-Oster v. Goldman, Sachs & Co.*,
    449 F. Supp. 3d 216 ............................................................................................................21

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ............................................................................................................20

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ................................................................................................13

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ...................................................................................................10, 11

*Daly v. Citigroup Inc.*,
   No. 16-cv-9183, 2018 WL 741414 (S.D.N.Y. Feb. 6, 2018) ..................................................22

*Davis v. Crothall Healthcare, Inc.*,
   No. 27-cv-7196, 2023 WL 6237845 (S.D.N.Y. Sept. 26, 2023) ..........................................23

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ...........................................................................................................20

*DDK Hotels, LLC, v. Williams-Sonoma, Inc.*
   6 F.4th 308 (2d Cir. 2021) ..................................................................................................22

*Deutsche Bank AG v. JPMorgan Chase Bank*,
   No. 04-cv-7192, 2007 WL 2823129 (S.D.N.Y. Sept. 27, 2007), *aff'd*, 331 F.
   App'x 39 (2d Cir. 2009).......................................................................................................19

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010).............................................................................................2, 17

*Dillon v. Morano*,
   497 F.3d 247 (2d Cir. 2007)................................................................................................12

*Evergreen East Cooperative v. Whole Foods Market, Inc.*,
   No. 21-cv-2827, 2023 WL 545075 (2d Cir. Jan. 27, 2023)..................................................13

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995).............................................................................................................22

*Galanova v. Morgan Stanley Servs. Grp. Inc. et al.*,
   No. 23-cv-183, 2023 WL 6198823 (Sept. 22, 2023) ..........................................................23

*Gold v. Deutsch Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004)................................................................................................21

*Goldman v. White Plains Ctr. for Nursing Care, LLC*,
   11 N.Y.3d 173 (2008) .....................................................................................................18, 19

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)...............................................................................................................20

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)................................................................................................................8

*Holahan v. 488 Performance Group, Inc.*,
   140 A.D.3d 414, 33 N.Y.S.3d 214 (1st Dep't 2016) .......................................................18, 19

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004).............................................................................................20, 21

iv

*Katz v. Cellco P'ship*,
　　794 F.3d 341 (2d Cir. 2015) ..................................................................................23

*Lerner v. Fleet Bank, N.A.*,
　　318 F.3d 113 (2d Cir. 2003) ....................................................................................8

*Lewis v. ANSYS, Inc.*,
　　No. 19-cv-10427, 2021 WL 1199072 (S.D.N.Y. Mar. 30, 2021) ...........................21

*Lizardo v. Denny's, Inc.*,
　　270 F.3d 94 (2d Cir. 2001) ....................................................................................15

*McMillian v. MTA Metro-N. R.R.*,
　　No. 20-cv-01026, 2021 WL 4311318 (S.D.N.Y. Sept. 20, 2021) ..........................14

*Mehler v. Terminix Int'l Co.*,
　　205 F.3d 44 (2d Cir. 2000) ....................................................................................21

*MI Installers & Furniture Serv., Inc. v. N.Y.C. Dist. Council of Carpenters
Pension Fund*,
　　476 F. Supp. 2d 387 (S.D.N.Y. 2007) ...................................................................21

*Mitchell v. N.Y.C. Dep't of Educ.*,
　　No. 20-CV-1555, 2022 WL 621956 (S.D.N.Y. Mar. 3, 2022) ...............................10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
　　473 U.S. 614 (1985) ..............................................................................................22

*Mitura v. Finco Services, Inc.*,
　　No. 23-cv-2879, 2024 WL 232323 (S.D.N.Y. Jan. 22, 2024) ..........................15, 16

*Morales v. Div. of Youth & Fam. Just.*,
　　No. 14-cv-7253, 2019 WL 3430168 (S.D.N.Y. July 30, 2019) ..............................11

*Mullins v. City of New York*,
　　626 F.3d 47 (2d Cir. 2010) ....................................................................................16

*Nicosia v. Amazon.com, Inc.*,
　　No. 21-cv-2624, 2023 WL 309545 (2d Cir. Jan. 19, 2023) ...................................23

*Odom v. Columbia Univ.*,
　　906 F. Supp. 188 (S.D.N.Y. 1995) .........................................................................10

*Okor v. Borough of Manhattan Cmty. Coll.*,
　　No. 14-cv-1593, 2015 WL 3750630 (S.D.N.Y. June 16, 2015) ...............................9

*Pisana v. Merrill Lynch & Co.*,
　　No. 93-cv-4541, 1995 WL 438715 (S.D.N.Y. July 24, 1995) ................................10

v

*Richards v. City of N.Y.*,
    No. 19-cv-10697, 2021 WL 4443599 (S.D.N.Y. Sept. 28, 2021) ..........................................14

*Rubert v. King*,
    No. 19-cv-2781, 2020 WL 5751513 (S.D.N.Y. Sept. 25, 2020) ...............................................14

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)................................................................................................................8

*Sheri Torah, Inc. v. Vill. of S. Blooming Grove*,
    No. 10-cv-3762, 2013 WL 1454953 (S.D.N.Y. Mar. 28, 2013)................................................8

*Steele v. L.F. Rothschild & Co.*,
    701 F. Supp. 407 (S.D.N.Y. 1988)..............................................................................................23

*Stein v. McGraw-Hill, Inc.*,
    782 F. Supp. 207 (S.D.N.Y. 1992)..............................................................................................12

*Williams-Lawson v. Subway Surface Supervisors Ass'n*,
    No. 20-cv-8544, 2021 WL 4943554 (S.D.N.Y. June 21, 2021) ........................................11, 12

*Wood v Long Is. Pipe Supply, Inc.*,
    82 A.D.3d 1088 (2d Dep't 2011)................................................................................................19

*Wu v. Good Samaritan Hosp. Med. Ctr.*,
    815 Fed. App'x 575 (2d Cir. 2020)............................................................................................12

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994).........................................................................................................9, 10

## Statutes

28 U.S.C. § 1367(c)(3)...........................................................................................................................17

42 U.S.C. § 1981 ............................................................................................................................ *passim*

Civil Rights Act of 1964 Title VII................................................................................................10

9 U.S.C. §1 *et seq.*......................................................................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 12(b) ...................................................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendants Landry's LLC d/b/a Landry's, Inc. (f/k/a Landry's Inc.)("Landry's")[1] and Palm Management Corp. ("Palm Management") (together, "Defendants"),[2] submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff Joy Vida Jones ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, pursuant to Rule 12 (b)(1) and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* ("FAA").

Plaintiff has failed to allege sufficient facts to show that she was discriminated against because of her race or retaliated against for engaging in protected activity under 42 U.S.C. § 1981 ("Section 1981"). Plaintiff cannot show that the termination of her alleged employment with Palm Management immediately after its acquisition by Landry's was in any way related to her race or alleged complaints about disparate treatment made years prior to Palm Management. She also cannot sustain her claim for breach of contract against Palm Management as the alleged contract terminated by its own terms over five years <u>before</u> it was allegedly breached. If, however, as Plaintiff alleges there was a valid contract that existed between her and Palm Management, she must be bound by the mandatory arbitration provision contained in the agreement and this matter should be dismissed or stayed and Plaintiff should be compelled to arbitrate any claims against Defendants should she wish to pursue them.

---

[1] Incorrectly pled as Landry's Inc.
[2] Just One More Restaurant Corp. has also been named as a defendant in this action. That entity has not yet appeared in this action and this motion is not being submitted on its behalf.

<u>**STATEMENT OF FACTS**</u>[3]

**A.    <u>The Parties</u>**

Plaintiff alleges that she is a Black/African American woman and provided legal services to Palm Management as its General Counsel from July 2012 through March 2020. (Compl. ¶¶ 1, 3, 8, 21-22, 117.) Plaintiff alleges that during her alleged employment with Palm Management, she reported to: (1) Mr. Walter Ganzi, a former owner of Palm Management; (2) Mr. Bruce Bozzi, a former owner of Palm Management; (3) Jens Baake, Palm Management's Chief Operation Officer ("COO") from July 2018 through January 2020; and (4) James Hamilton, Palm Management's current COO.[4] (*Id.* ¶¶ 17, 32, 96.) Plaintiff alleges that Mr. Baake resigned from Palm Management in January 2020 and that in March 2020, Messrs. Ganzi and Bozzi sold their interests in Palm Management. (*Id.* ¶¶ 94, 96, 103.)

Plaintiff has alleged that in March 2020, Landry's acquired Palm Management and at that same time Landry's terminated her alleged employment with Palm Management. (*Id.* ¶¶ 103-104.) Plaintiff does not allege that she provided services to Landry's at any time.

**B.    <u>Plaintiff's Allegations Concerning Her Contractual Relationship With Palm Management</u>**

Plaintiff alleges that in 1983 she began providing legal services for Palm Management and its former owners, Messrs. Ganzi and Bozzi, as outside counsel. (*Id.* ¶¶ 15-17.) She claims that "[i]n 2012, based on the high-quality work that [she] performed for [Palm Management], Mr. Ganzi recruited her to join [Palm Management] as its General Counsel." (*Id.* ¶ 19.) Plaintiff alleges

---

[3] For purposes of this motion, the factual allegations set forth in the Complaint are assumed true and form the basis for the statement of facts. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).

[4] Mr. Hamilton is not currently employed by Defendants.

that in July 2012, "[she] entered into a two-year contract, dated July 1, 2012," to serve as Palm Management's General Counsel. (*Id.* ¶¶ 21-22.)

Plaintiff attached a copy of her alleged agreement with Palm Management (the "Employment Agreement") as Exhibit 1 to the Complaint. (*Id.* ¶ 22.) The Employment Agreement provides in part:

> **2. EMPLOYMENT TERM.**    The Company agrees to employment [Plaintiff] pursuant to the terms of this Agreement, and [Plaintiff] agree to be employed, for a term of two years (the "<u>Term</u>") commencing on July 1, 2012 (the "<u>Effective Date</u>"). Following the expiration of the Term, this Agreement can be extended in the Company's sole discretion on a month to month basis. This Agreement shall terminate at the end of the Term unless expressly extended by the Company.

(Compl. ¶ 22; Ex. 1, § 2 (emphasis in original).) The Employment Agreement further provides that any modifications must be made by a writing signed by both parties. (Compl., Ex. 1, § 19.) Specifically, Section 19 provides in relevant part that "[n]o provision of this Agreement may be modified, waived, or discharged, unless such waiver, modification or discharge **is agreed to in writing and signed by [Plaintiff] and [Palm Management]**." (*Id.*) (emphasis added.)

Pursuant to its terms, the Employment Agreement expired in July 2014. (*See id*. at § 2.) Plaintiff does not allege that she and Palm Management ever entered into a signed writing extending the term of the Employment Agreement beyond July 2014. Instead, in conclusory fashion Plaintiff alleges that upon expiration of the initial term in July 2014, "[Palm Management] extended the Employment Agreement on a month-to-month basis until [she] was terminated … on March 13, 2020." (Compl. ¶ 28.) She claims that Palm Management "manifested its intention to extend the Employment Agreement through its continued adherence to [its] terms[.]" (*Id.* at ¶ 29.)

The Employment Agreement also contains a mandatory arbitration provision, requiring that "[a]ny dispute or controversy arising under or in connection with this Agreement or

3

[Plaintiff's] employment with the [Palm] … shall be settled exclusively by arbitration, conducted before a single arbitrator in Washington, D.C. in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association[.]" (Compl., Ex. 1, § 18.) As a seasoned and well-educated attorney, one would expect that Plaintiff was well aware of the provisions and requirements of her own Employment Agreement.

Plaintiff alleges that in March 2020, Landry's acquired Palm Management and at that time, Landry's Director of Legal Affairs and in-house counsel, Jeanette McKay, provided her with a termination letter (the "Termination Letter"). (Compl. ¶¶ 103-104.) Plaintiff does not allege that she and Landry's entered into any contractual relationship. Nonetheless, she further alleges that under the terms of her Employment Agreement, she could only be terminated "for cause." (*Id.* ¶ 122.)

Contrary to Plaintiff's allegations, the Employment Agreement provides multiple reasons upon which the agreement could be terminated—aside from "cause." For example, as discussed above, the Employment Agreement would terminate upon the expiration of the term in July 2014 unless the term was "expressly extended" by Palm Management. (Compl., Ex. 1, § 2.) The Employment Agreement also contains provisions allowing for it to be terminated by reason of Plaintiff's death or disability, for cause, without cause, or by Plaintiff's voluntary resignation. (*Id.* at § 6.)

### C.    Plaintiff's Allegations Concerning Alleged Race Discrimination

#### 1.    Plaintiff's Allegations Regarding Conduct From January 2018 Through February 2019.

Plaintiff alleges that in January 2018, she began treatment for a cancer diagnosis. (Compl. ¶ 47.) She alleges that Messrs. Ganzi and Bozzi and Palm Management's "all-White male leadership, were not at all concerned about [her] health, but instead cared only about [its] bottom

line." (*Id.* at ¶ 49.) At an unspecified time, she claims that Mr. Ganzi (the individual she alleges recruited her) and Palm Management "began plotting to diminish [her] job responsibilities [to] force her out[.]" (*Id.* at ¶ 50.) Plaintiff makes the conclusory allegation that "[u]pon information and belief, [Palm Management] has dealt in the past with several other (non-Black) employees who were suffering from similar cancer diagnoses, but treated [Plaintiff] differently, under similar circumstances, based solely on her race." (*Id.* at ¶ 51.) However, Plaintiff does not identify any Palm Management employees who were "treated differently," let alone identify their race.

Plaintiff further alleges that "[i]n February 2018, as part of his plan to force [Plaintiff] from [Palm Management], Mr. Ganzi asked [Plaintiff's] colleagues to provide him with a list of all assignments that they were working on…[and he] mandated that, going forward, employees direct all legal issues...to him, not [Plaintiff]." (*Id.* at ¶¶ 52-53.) Plaintiff further alleges that "Mr. Ganzi outrageously began telling employees and C-suite executives that [Plaintiff] should not be involved with [Palm Management's] legal work because she was 'going to die' [because of her cancer]." (*Id.* at ¶ 54.) Plaintiff does not allege how any of these actions or comments are related in any way to her race.

Next, Plaintiff alleges that in March 2018, Palm Management "sent a letter to numerous outside attorneys that [it] regularly retained" stating, in sum and substance that Palm Management retained an outside attorney to assist with legal matters on "in an interim capacity" while Plaintiff is "recover[ing] from [her] medical issues[.]" (*Id.* at ¶ 56.) Plaintiff alleges, "[u]pon information and belief, [Palm Management] has never before or since transmitted such a letter in reference to any one of their non-Black employees." (*Id.* ¶ 58.) Plaintiff alleges that she became aware of the letter in April 2018, and through subsequent events, such as exclusions from meetings and events,

it was apparent that "[Palm Management] had every intention to sideline [her] and force her [out]." (*Id.* at ¶¶ 60, 62-65.)

Plaintiff alleges that in September 2018, Palm Management held "its traditional Mangers Meeting retreat," which she attended, but she was "not asked to present … as she had in previous years." (*Id.* at ¶¶ 67-69.) Instead, Palm Management's Director of Human Resources, Rosemarie Whitelocke, who like Plaintiff is an African American woman, gave a presentation. (*Id.* at ¶¶ 69, 86.) Plaintiff alleges that she complained to Palm Management's COO, Mr. Baake and Ms. Whitelocke about this purported exclusion. (*Id.* at ¶ 70.) Plaintiff does not provide any additional detail regarding this purported complaint. In particular, Plaintiff does not allege that she complained that she had been excluded because of her race.

Plaintiff further alleges that "[o]n one occasion, Mr. Ganzi excluded [her] from a work lunch with employees from Loews [] even though [Palm Management] was in the middle of negotiations with Loews to lease retail space … and [Plaintiff] had previously drafted and negotiated similar agreements with Loews." (*Id.* at ¶ 73.) Relatedly, she claims that in October 2018, Mr. Ganzi told her that she would not be involved in the Loews project and in December 2019, Mr. Ganzi told her not to interfere Palm Management's outside counsel who was "handling some of [Palm Management's] legal work," including this project. (*Id.* at ¶¶ 74, 79.)

Plaintiff also alleges that in January 2019, she was not invited to attend a Palm Management "presentation and dinner." (*Id.* at ¶¶ 80-83.) She claims that she complained to Mr. Baake that he "exclud[ed] the only African American Board member from the dinner." (*Id.* at ¶ 84.) Plaintiff alleges that following her complaint, Mr. Baake "invited Ms. Whitelocke, who is African American but had not been previously asked to attend the dinner." (*Id.* at ¶ 86.) Plaintiff asserts

157104175.1

that at that time, she "called Mr. Ganzi to complain about Mr. Baake excluding her from the dinner," and Mr. Ganzi told her to "let it go." (*Id.* at ¶ 89.)

Plaintiff alleges that she met with Mr. Baake in February 2019 "regarding her complaints that she had been excluded from numerous works assignments and meetings." (*Id.* at ¶ 91.) Again, she does not allege that she complained about being excluded because of her race/color. (*Id.*) She further admits that Mr. Baake apologized for excluding Plaintiff from meetings and he acknowledged that he would work to "improve his relationship" with Plaintiff. (*Id.* at ¶ 92.)

### 2.      Plaintiff's Allegations Regarding Conduct From January 2020 Through March 2020.

Plaintiff does not allege any specific instances of alleged disparate treatment between her February 2019 conversation with Mr. Baake and January 2020. She claims that in January 2020, Mr. Baake resigned from Palm Management and Mr. Hamilton was elevated to COO. (*Id.* at ¶ 94.) She claims that "Mr. Hamilton … continued to exclude [her] from important work meetings and events." (*Id.* at ¶ 95.) She next alleges that "around that time [January 2020]" Messrs. Ganzi and Bozzi filed for bankruptcy and she was "excluded [] from presentations to potential buyers of [their] interests in [Palm Management]." (*Id.* at ¶¶ 96, 98.)

Plaintiff alleges that in March 2020, Landry's acquired Palm Management and at that time, Landry's Director of Legal Affairs, Jeanette McKay, provided her with the Termination Letter. (*Id.* at ¶¶ 103-104.) Specifically, Plaintiff alleges that Ms. McKay stated in the letter:

> Dear Ms. Jones,
>
> It is my understanding that you have provided advice and other legal work for the Palm Restaurants. I am in-house counsel for Landry's and its affiliated companies, which as you know now includes the Palm. All work currently being performed by you for the Company should be transferred to me at this time. Please provide me with a list of any litigation that you are managing and contact for local counsel, where applicable.

7

> While we appreciate your prior service, other than the transfer of any ongoing issues to my attention, which should be finalized by the end of the day tomorrow, your services are terminated effective immediately. If you wish to discuss any current litigation, please feel free to reach me at . . . .
>
> We wish you all the best in your future endeavors.

(*Id.* at ¶ 104.)

## LEGAL STANDARD APPLICABLE TO MOTION TO DISMISS

A party may move to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, the court should ignore any allegations that are based solely on speculation, conjecture, opinions, or legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is 'substantively identical' to that governing Rule 12(b)(6), except the plaintiff bears the burden of establishing jurisdiction in a 12(b)(1) motion[.]" *Sheri Torah, Inc. v. Vill. of S. Blooming Grove*, No. 10-cv-3762, 2013 WL 1454953, at *5 (S.D.N.Y. Mar. 28, 2013) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

Plaintiff has alleged two causes of action in her suit: (1) a claim for alleged race/color discrimination and retaliation claim under Section 1981 against Defendants; and (2) a breach of contract claim against Palm Management. Plaintiff's Complaint should be dismissed in its entirety

or, in the alternative, this action should be stayed and Plaintiff should be compelled to arbitrate her claims. Plaintiff has failed to allege sufficient facts that suggest that "but for" her race or any alleged protected activity she would not have been terminated, as required under Section 1981. She has not alleged that a valid contract existed between her and Palm Management at the time of its alleged breach, warranting dismissal of her breach of contract claim. If this Court were to find that a contract did exist that could have been breached, alternatively, this action must be dismissed or stayed as Plaintiff agreed in her alleged Employment Agreement that she would arbitrate any and all claims related to her alleged employment.

## I.    PLAINTIFF'S SECTION 1981 CLAIMS MUST BE DISMISSED.

### A.    <u>Plaintiff's Allegations That Pre-Date November 9, 2019 Are Time-Barred.</u>

Section 1981 prohibits race discrimination and "covers claims for conduct following the formation of a contract—such as for hostile work environment [and] wrongful discharge…." *Okor v. Borough of Manhattan Cmty. Coll.*, No. 14-cv-1593, 2015 WL 3750630, at *2 (S.D.N.Y. June 16, 2015). "The statute of limitations for claims brought under [Section] 1981…is four years." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023). Accordingly, Plaintiff's Section 1981 claims are time barred to the extent they rely on conduct that occurred <u>before</u> November 9, 2019 – four years prior to Plaintiff's filing of the Complaint. Accordingly, Plaintiff's Section 1981 claim based on any actions alleged to have occurred prior to that date must be dismissed.[5]

### B.    <u>Plaintiff Fails To State A Claim For Discrimination Under Section 1981.</u>

"Section 1981 bars certain racially motivated and purposefully discriminatory acts." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994). To establish a *prima face* case of discrimination under this statute, a plaintiff must "plead facts showing (1) that [s]he belonged to a protected class;

---

[5] Paragraphs 47 through 93 of the Complaint contain allegations that pre-date November 9, 2019.

(2) that [s]he was qualified for the position [s]he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Mitchell v. N.Y.C. Dep't of Educ.*, No. 20-CV-1555, 2022 WL 621956, at *5 (S.D.N.Y. Mar. 3, 2022) (internal quotations omitted). "Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (citations omitted).

The standard for discriminatory intent in a Section 1981 claim is but-for causation. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). The standard for alleging causation under Section 1981 is higher than that under Title VII of the Civil Rights Act of 1964 ("Title VII") and other discrimination statutes. "[A] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019.

A "plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf*, 35 F.3d at 713. "It is not enough for a plaintiff to recite mere conclusory accusations." *Odom v. Columbia Univ.*, 906 F. Supp. 188, 194 (S.D.N.Y. 1995). "A mere factual assertion of unequal treatment or race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion; instead, a plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Id.* at 195 (quoting *Yusuf*, 35 F.3d at 713).[6]

---

[6] Further, where, as here, Plaintiff's employment was eliminated as part of a corporate restructuring, Plaintiff faces an even greater burden to prove that Defendants intentionally discriminated against her. *See Pisana v. Merrill Lynch & Co.*, No. 93-cv-4541, 1995 WL 438715, at *3 (S.D.N.Y. July 24, 1995) ("Courts do, however, place a greater burden on plaintiffs in such cases to prove an intent to discriminate.").

Plaintiff has not, and cannot, meet this burden. Other than unsupported and conclusory statements, the Complaint does not contain any allegations that give could give rise to an inference that her race was a factor, much less the "but for" cause of her alleged termination or any other actions allegedly taken against her to support a claim under Section 1981. *See Comcast Corp.*, 140 S. Ct. at 1019.

**1.  Plaintiff Fails To Allege Any Adverse Employment Actions Prior To Her March 2020 Termination.**

"To demonstrate an adverse employment action for purposes of a [Section 1981 claim], a plaintiff must demonstrate that she suffered a materially adverse change in the terms and conditions of employment…To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Williams-Lawson v. Subway Surface Supervisors Ass'n,* No. 20-cv-8544, 2021 WL 4943554, at *10 (S.D.N.Y. June 21, 2021) (internal quotations, citations, and alterations omitted). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Morales v. Div. of Youth & Fam. Just.*, No. 14-cv-7253, 2019 WL 3430168, at *4 (S.D.N.Y. July 30, 2019) (internal quotations omitted).

To the extent that Plaintiff contends that she was subject to adverse employment actions because Palm Management allegedly excluded her from meetings and events in 2018 and 2019 and/or because she was relieved of some job responsibilities while she was on leave for cancer treatment in 2018, these allegations fail. Allegations that an employee was "excluded from meetings" are nothing more than "everyday workplace grievances, disappointments, and setbacks that do not constitute adverse employment action to support a [Section] 1981 claim." *Williams*,

11

2021 WL 4943554, at *11 (internal quotations and alterations omitted); *see also Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (holding exclusion from staff meetings not materially adverse). Because the Complaint fails to allege that Plaintiff suffered any adverse employment action *prior* to the alleged termination of her employment in March 2020, she cannot maintain a Section 1981 discrimination claim for any conduct that preceded her alleged termination. Accordingly, to the extent that Plaintiff attempts to allege any discrimination claim separate and apart from Plaintiff's alleged termination, such claims should be dismissed.

### 2. Plaintiff Has Failed To Allege That She Was Terminated Because Of Her Race.

The only adverse action alleged by Plaintiff is her alleged termination in March 2020 following Landry's acquisition of Palm Management. Plaintiff has not, and cannot, allege sufficient facts to create an inference of discrimination, let alone that her race was the "but for" cause of her termination as required under Section 1981.

The Complaint is devoid of facts sufficient to support a plausible inference of discriminatory motive for her alleged termination. "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [] [adverse action]." *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 Fed. App'x 575, 580 (2d Cir. 2020) (quotations and citations omitted). An inference of discrimination can also arise when an employer replaces a terminated or demoted employee with an individual outside of the employee's protected class. *See Stein v. McGraw-Hill, Inc.*, 782 F. Supp. 207, 212 (S.D.N.Y. 1992). None of these circumstances are present here.

Plaintiff does not allege any statements or conduct by anyone with Palm Management or Landry's that indicates that their actions regarding her alleged termination were related to her protected class. Nor does she identify any other employee who was allegedly treated different (neither better nor worse) than she was on account of their race. Even if one were to give credence to Plaintiff's allegations of alleged disparate treatment by Palm Management executives, Plaintiff admits that these individuals were no longer with Palm Management at the time Landry's acquired the company. There are no allegations that any of these individuals played any role in Landry's decision to terminate her alleged employment. Plaintiff's contention that "Mr. Hamilton used the acquisition by Landry's, ***upon information and belief*** with its knowledge and consent, as a pretextual justification to terminate [Plaintiff]" is a conclusory assertion that fails to support Plaintiff's claim. (Compl. ¶ 106) (emphasis added). *See Evergreen East Cooperative v. Whole Foods Market, Inc.*, No. 21-cv-2827, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023) (citing *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018) (finding allegations made almost entirely "on information and belief" insufficient to survive a motion to dismiss)). Plaintiff does not allege that upon Landry's acquisition of Palm Management, that Mr. Hamilton maintained any authority over Landry's personnel decisions, let alone the authority to terminate her alleged employment.

In addition, Plaintiff does not allege that the individual who provided her with the Termination Letter, Landry's Director of Legal Affairs and in-house counsel, Jeanette McKay, harbored any discriminatory animus towards Plaintiff, nor does Plaintiff allege that the Termination Letter suggested that Plaintiff's race/color was a motivating factor in Landry's decision regarding her alleged employment. In fact, as alleged in the Complaint, the Termination Letter shows that Landry's acquisition of Palm Management obviated the need for Plaintiff's

13

alleged role as General Counsel, as Landry's maintains its own in-house legal department which would thereafter handle the legal affairs of Palm Management. (*See* Compl. ¶ 104.) Even a liberal reading of the Complaint fails to suggest that Landry's decision to eliminate Plaintiff's alleged employment as Palm Management's General Counsel was rooted in a discriminatory animus.

Other than Plaintiff's conclusory allegations, she has alleged no facts that even suggest that her race played any role in her termination. Plaintiff's naked assertions, without any factual allegations that would suggest in any way that Landry's decision to terminate her relationship with Palm Management was based on her race, are precisely the type of allegations that this Court and others have routinely found to be insufficient to maintain a discrimination claim. *See, e.g., Rubert v. King*, No. 19-cv-2781, 2020 WL 5751513, at *1-2, *7 (S.D.N.Y. Sept. 25, 2020) (dismissing Section 1981 claim where plaintiff failed "to provide non-conclusory allegations that plausibly suggest that his race, national origin, or a relevant protected activity, was a 'but-for' cause of his termination"); *see also McMillian v. MTA Metro-N. R.R.*, No. 20-cv-01026, 2021 WL 4311318, at *1-5 (S.D.N.Y. Sept. 20, 2021) (dismissing New York City Human Rights law claim because plaintiff did not allege "any facts which link her termination to unlawful discrimination" and plaintiff cannot "rely on the fallacy that because she belongs to a protected class, it is plausible that anything negative that happened to her at work was because of her membership in that class") (internal quotations omitted); *Richards v. City of N.Y.*, No. 19-cv-10697, 2021 WL 4443599, at *1-4, *6 (S.D.N.Y. Sept. 28, 2021) (dismissing discrimination complaint because "the [] Complaint and exhibits attached thereto are primarily composed of conclusory assertions that Plaintiff was fired based on his national origin, race and color," and "[s]uch bald statements— without any supporting facts—are too conclusory to permit an inference of discriminatory animus") (internal quotations omitted).

157104175.1

Accordingly, Plaintiff has failed to allege sufficient facts to support a claim for discrimination under Section 1981 and her claim should be dismissed.

**C.    Plaintiff Fails To State A Claim For Retaliation Under Section 1981.**

To state a claim for retaliation under Section 1981, a plaintiff must allege sufficient facts to show "that she '(1) engaged in an activity protected under anti-discrimination statutes, (2) the defendants were aware of [her] participation in the protected activity, (3) the defendants took adverse action against [her] based upon [her] activity, and (4) a causal connection existed between [her] protected activity and the adverse action taken by defendants.'" *Mitura v. Finco Services, Inc.*, No. 23-cv-2879, 2024 WL 232323, at *9 (S.D.N.Y. Jan. 22, 2024) (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001)). A causal connection in a retaliation claim can be stated either directly by pleading allegations of "retaliatory animus directed against the plaintiff by the defendant" or indirectly by pleading facts that show a close temporal proximity between the protected activity and the adverse employment action. *Id.* (citing *Brightman v. Physician Affiliate Grp. of New York, P.C.*, No. 20-cv-4290, 2021 WL 1999466, at *8 (S.D.N.Y. May 19, 2021).

Plaintiff's retaliation claim must be dismissed because she has not alleged that she engaged in any protected activity and, even if she had, she has not alleged facts that would show a causal connection between such activity and her alleged termination. The "protected activity" Plaintiff alleges consists of the following three purported complaints: (1) at an unspecified time, Plaintiff complained to Palm Management about being excluded from presenting at a September 2018 "Managers Meeting retreat"; (2) in January 2019, Plaintiff complained to Palm Management that she was not invited to attend a dinner; and (3) in February 2019, Plaintiff "met with [Palm Management's COO] … regarding her complaints that she had been excluded from numerous work assignments and meetings." (Compl. ¶¶ 67, 70, 80, 84, 88, 91.) Notably, Plaintiff does not

allege that she complained to anyone that the actions were being taken *because of her race*—she does not even hint that she herself ever connected her complaints to her race. Ultimately, the Complaint is completely devoid of any allegation that Plaintiff engaged in any protected activity throughout her alleged employment with Palm Management. This reality warrants dismissal of Plaintiff's retaliation claim. *See e.g., Brown v. Orange & Rockland Util., Inc.*, 594 F. Supp. 2d 382, 391 (S.D.N.Y. 2009) (determining that plaintiff's Section 1981 claim should be dismissed and noting, in relevant part, that "[a]s a preliminary matter, the Court must observe that [plaintiff] did not complain to anyone at [defendant] about race-based discrimination").

Even if one could view these alleged actions as being complaints about racial discrimination, Plaintiff's retaliation claim cannot survive dismissal because she fails to show any causal connection between those complaints and the termination of her relationship with Palm Management following the sale to Landry's in March 2020. In fact, as she herself alleges, Plaintiff's last instance of alleged protected activity occurred in February 2019, nearly 13 months prior to Landry's alleged acquisition of Palm Management and Plaintiff's alleged termination in March 2020. (Compl. ¶ 91.) Further, she does not allege that any of these complaints were made to anyone involved in the decision to terminate her relationship with Palm Management, or that anyone involved in such decision would have any knowledge of her alleged complaints. These allegations fail to show "any evidence of retaliatory animus" on behalf of Defendants. *See Mitura*, 2024 WL 232323, at \*9 (dismissing Section 1981 retaliation claim where "the more than six–month gap between the protected activity and the adverse employment action is simply too long to give rise to a plausible inference that the events were causally related") (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).

16

Plaintiff's failure to allege a causal connection between any purported protected activity and her termination is fatal to her retaliation claim. Accordingly, this claim should be dismissed.

## II. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIM.

Upon dismissal of Plaintiff Section 1981 claims, Defendants respectfully request that the Court declines to exercise jurisdiction over the remaining state law claim (breach of contract). Pursuant to 28 U.S.C. § 1367(c)(3), a district Court "may decline to exercise supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, where "all federal-law claims are eliminated before trial, the balance of the factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, the balance of factors weighs in favor of declining supplemental jurisdiction. Aside from the briefing of the instant motion, there have not been any substantive developments; no discovery has occurred, nor has the initial pretrial conference taken place.

Accordingly, following dismissal of the Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining claim for breach of contract.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT BECAUSE THERE WAS NO EMPLOYMENT AGREEMENT AT THE TIME OF THE ALLEGED BREACH.

Plaintiff's breach of contract claim must be dismissed as Plaintiff's alleged Employment Agreement expired by its own terms over five years before the alleged breach by Palm Management in March 2020.[7]

---

[7] As Plaintiff attached the Employment Agreement to the Complaint (Compl. ¶ 22; Ex. 1,) the Court may consider this document when ruling on the instant motion. *See DiFolco*, 622 F.3d 104, 111 ("[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.")

17

The Employment Agreement specifically provides that it was "for a term of two years…commencing on July 1, 2012." (Compl., Ex. 1, § 2.) The Employment Agreement further provides that it "shall terminate at the end of the Term unless expressly extended by the Company." (*Id.*) The agreement also requires that any modifications be "agreed to in writing and signed by [Plaintiff] and [Palm Management]." (*Id.* § 19.) Thus, by its plain terms, the Employment Agreement would expire in July 2014 unless Palm Management expressly extended the terms of the Agreement as evidenced by a writing signed by Plaintiff and Palm Management.

Plaintiff has not alleged, because she cannot allege, that there is any writing signed by her and Palm Management in which Palm Management extended the term of the Employment Agreement. Moreover, she does not even allege that there was an oral agreement to extend the Employment Agreement. Accordingly, the Employment Agreement expired by its terms on July 1, 2014. *See Goldman v. White Plains Ctr. for Nursing Care, LLC*, 11 N.Y.3d 173, 177-78 (2008); *Holahan v. 488 Performance Group, Inc.*, 140 A.D.3d 414, 33 N.Y.S.3d 214 (1st Dep't 2016).

Plaintiff's argument that the Employment Agreement remained in force for nearly another six years, based on Palm Management's "manifest[ation] of its intention to extend…through its continued adherence to [its] terms" has been explicitly rejected by the New York State Court of Appeals. (Compl. ¶ 29.) While New York common law "recognizes an inference that parties intend to renew an employment agreement … where the employee continues to work after expiration of an employment contract[,]" this rule "can be rebutted by demonstrating that the parties did not intend to allow a contract to renew automatically." *Goldman*, 11 N.Y.3d at 177. The parties' intention to not renew is demonstrated if the contract "expires on a specified date absent additional negotiations for a new agreement." *Id*. at 178. Accordingly, "the common-law rule [of automatic renewal] cannot be used to imply that there was mutual and silent assent to automatic contract

renewal when an agreement imposes an express obligation on the parties to enter into a new contract to extend the term of employment." *Id.*

These are precisely the circumstances alleged here. Plaintiff alleges she and Palm Management entered into the Employment Agreement which imposes an express obligation on the parties to enter into a new signed writing if they wish to extend the terms of the agreement beyond the stated term. No such writing exists here. Under New York law, where a contract "provides a procedure for amending contract provisions, that procedure must be followed to execute a valid amendment." *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) (citing *Deutsche Bank AG v. JPMorgan Chase Bank*, No. 04-cv-7192, 2007 WL 2823129, at *23–*24 (S.D.N.Y. Sept. 27, 2007), *aff'd*, 331 Fed. Appx. 39 (2d Cir. 2009) (where contract provides that no amendment is valid "unless in writing and signed" by certain required parties, the absence of such signatures invalidated a purported amendment)). As such, as of July 2014, the Employment Agreement was a nullity and could not be breached thereafter by either party. *See, e.g., A Great Choice Lawncare & Landscaping, LLC v Carlini*, 167 A.D.3d 1363, 1365, 91 N.Y.S.3d 575 (3d Dep't 2018) (where parties entered into one year agreement in 2009 that provided for a one year automatic renewal, "as of 2016, there was no contract in effect for [defendant] to breach") (internal quotations omitted); *Holahan*, 140 A.D.3d at 414 ("The employment agreement expired in December 2007, and it unambiguously provided that any extension of the agreement needed to be in writing. Because there was no writing extending the agreement, her breach of contract claim fails as a matter of law."); *Wood v Long Is. Pipe Supply, Inc.*, 82 A.D.3d 1088, 1089 (2d Dep't 2011) (common law "presumption that parties intend to renew an employment agreement for an additional year where the employee continues to work

19

after expiration of that agreement pursuant to the same material terms" is rebutted "when the terms of the original agreement require a new contract to extend the term of employment").

Accordingly, Plaintiff's breach of contract claim should be dismissed in its entirety.

## IV. ANY CLAIMS NOT DISMISSED FOR FAILURE TO STATE A CLAIM MUST BE COMPELLED TO ARBITRATION.

Alternatively, if the Court were to find that Plaintiff alleged that she and Palm Management had a valid contract, Plaintiff must be compelled to arbitrate her claims and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) or stayed pursuant to the FAA.

## A.    The FAA Governs Plaintiff's Agreement To Arbitrate.

Arbitration clauses in an employment context are governed by the FAA. 9 U.S.C. § 1 *et seq.*; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Further, the FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004); *see also Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("it is difficult to overstate the strong federal policy in favor of arbitration."). Thus, "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue," and any doubts concerning the scope of arbitrability should be resolved in favor of arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *JLM Indus.*, 387 F.3d at 171.

A court deciding a motion to compel arbitration must resolve four issues: (1) "whether the parties agreed to arbitrate;" (2) "the scope of that agreement;" (3) "if federal statutory claims are asserted, … whether Congress intended those claims to be nonarbitrable;" and (4) "if … some but not all, of the claims are arbitrable, … whether to stay the balance of the proceedings pending

arbitration." *JLM Indus.*, 387 F.3d at 169 (citation omitted). Here, all factors point in favor of arbitration and dismissal of this case in full.

**B.**       **Arbitration Should Be Compelled.**

   **1.       The Parties Agreed To Arbitrate.**

Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The determination as to whether a party is bound by the arbitration clause is typically determined by looking at generally accepted principles of contract law. *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000) ("courts should generally apply state law principles that govern the formation of contracts" to decide whether parties to a contract agreed to arbitrate a particular matter); *Lewis v. ANSYS, Inc.*, No. 19-cv-10427, 2021 WL 1199072, at *4 (S.D.N.Y. Mar. 30, 2021); *MI Installers & Furniture Serv., Inc. v. N.Y.C. Dist. Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387, 390 (S.D.N.Y. 2007) ("It is the duty of the court to use general contract law principles to determine whether the parties agreed to arbitrate disputes and to ascertain and implement the reasonable expectations of the parties.").

Here, the Employment Agreement contains a mandatory arbitration provision. The Employment Agreement requires that "[a]ny dispute or controversy arising under or in connection with this Agreement or [Plaintiff's] employment with the Company, … shall be settled exclusively by arbitration…in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association then in effect." (*See* Compl., Ex. 1, § 18.) Thus, if the Court finds the Employment Agreement is enforceable, then Plaintiff must be bound by the mandatory provision contained therein. *See Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 242 ("'a party who signs or accepts a written contract … is conclusively presumed to know its contents and to assent to them.'") (quoting *Gold v. Deutsch Aktiengesellschaft*, 365 F.3d 144,

149 (2d Cir. 2004)) (compelling arbitration of employee based on signed agreement)). Accordingly, the Court should enforce the agreement to arbitrate.

> **2.      Plaintiff's Claims Fall Within The Scope Of The Arbitration Provision And Must Be Arbitrated.**

Presumptions in favor of arbitrability apply both to the enforceability of arbitration agreements, as well as to their scope. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (holding that issues will be deemed arbitrable unless the arbitration clause clearly does not include them). Indeed, as stated by the Second Circuit, "[w]here the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *DDK Hotels, LLC, v. Williams-Sonoma, Inc.,* 6 F.4th 308, 317 (2d Cir. 2021) (internal quotations and alterations omitted).

Here, Plaintiff's claims fall squarely within the scope of the arbitration provision and are subject to its mandatory arbitration procedures. Through this suit, Plaintiff contends that: (i) Palm Management breached a contract with her (the contract that is the basis of the subject arbitration agreement); and (ii) Palm Management and Landry's discriminated and retaliated against her on the basis of her race/color. These are exactly the type of "employment-related claims" covered by the arbitration provision.

As such, the entirety of the Complaint falls within the scope of the arbitration provision and all claims are indeed subject to arbitration.

> **3.      Plaintiff's Statutory Claim Is Subject To Arbitration.**

All of the claims asserted in the Complaint are arbitrable, including the Section 1981 claim. It is well-settled that federal statutory claims can be the subject of arbitration, absent a showing by

the party opposing arbitration of a contrary congressional intent. *See Daly v. Citigroup Inc.*, No. 16-cv-9183, 2018 WL 741414, at *2-3 (S.D.N.Y. Feb. 6, 2018); *Steele v. L.F. Rothschild & Co.*, 701 F. Supp. 407, 408 (S.D.N.Y. 1988). Courts have routinely held that claims under Section 1981 are arbitrable. *See Davis v. Crothall Healthcare, Inc.*, No. 27-cv-7196, 2023 WL 6237845 (S.D.N.Y. Sept. 26, 2023) (adopting recommendation of order granting motion to compel arbitration of employment-based claims, including claims under Title VII and Section 1981); *Galanova v. Morgan Stanley Servs. Grp. Inc. et al.*, No. 23-cv-183, 2023 WL 6198823 (Sept. 22, 2023) (granting motion to compel arbitration of discrimination, retaliation, and wrongful termination claims pursuant to Section 1981 and the Americans with Disabilities Act).

Accordingly, should the Court not dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), it should compel Plaintiff to arbitrate her claims against Defendants.

**C.** **This Action Should Be Dismissed In Its Entirety or Stayed Pending Arbitration.**

Where each of the issues raised in a complaint must be submitted to arbitration, courts have the discretion to dismiss the case in its entirety. *Nicosia v. Amazon.com, Inc.*, No. 21-cv-2624, 2023 WL 309545, at *3 n.1 (2d Cir. Jan. 19, 2023) (even in light of *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015) dismissal of the action was still appropriate where all of the claims were referred to arbitration and neither party requested a stay). Alternatively, this matter should be stayed pending arbitration pursuant to the FAA. *See Katz*, 794 F.3d at 347 ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all claims in an action have been referred to arbitration and a stay requested.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants'

motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, pursuant

to 12(b)(1) and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

Dated: April 5, 2024
New York, New York

**FOX ROTHSCHILD LLP**


By:    */s/ Alexander W. Bogdan*
         Carolyn D. Richmond
         Alexander W. Bogdan
         Devin S. Cohen
         101 Park Avenue, 17th Floor
         New York NY 10178
         Telephone: (212) 878-905-2305

         crichmond@foxrothschild.com
         abogdan@foxrothschild.com
         dscohen@foxrothschild.com

         *Attorneys for Defendants Landry's LLC d/b/a*
         *Landry's, Inc. (f/k/a Landry's Inc.) and Palm*
         *Management Corp.*

24