USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                            :

JOY VIDA JONES, ESQ.,                        :

                             Plaintiff,    :          1:23-cv-9920-GHW

                      -v-                    :         MEMORANDUM OPINION &
                                           :                 ORDER

LANDRY'S, INC., *et al.*,                       :

                            Defendants.   :

------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

Joy Vida Jones commenced this litigation against her former employers for race discrimination, retaliation, breach of contract, and breach of the implied covenant of good faith and fair dealing. Defendants moved to dismiss or, in the alternative, to compel arbitration of Ms. Jones' claims. Judge Willis issued a Report & Recommendation on Defendants' motion, recommending dismissal of some of Ms. Jones' claims and compelling arbitration of the rest. The Report & Recommendation also found the fee-shifting provisions of the parties' arbitration agreement to be unconscionable and recommended that the Court sever that provision. Because the Court should address the arbitrability of the dispute before reaching the merits, the Court declines to adopt the Report & Recommendation. Further, because the parties' arbitration agreement delegates issues of enforceability to the arbitrator, the Court declines to sever the fee-shifting provisions.

## II.   BACKGROUND

### A. Facts

The Court refers to Judge Willis' Report & Recommendation for a recitation of the relevant

facts alleged in Plaintiff's First Amended Complaint.[1]  *See* Dkt. No. 62 at 2–6.

### B. Procedural History

Plaintiff commenced this action on November 9, 2023.  Dkt. No. 1.  The case was referred to Magistrate Judge Jennifer Willis on November 14, 2023.  Dkt. No. 9.  On April 26, 2024, Plaintiff filed her First Amended Complaint.  Dkt. No. 33 (the "FAC").  On June 21, 2024, Defendants moved to dismiss the FAC or, in the alternative, to compel arbitration of Plaintiff's claims pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*  Dkt. No. 38.  Defendants filed an accompanying memorandum of law.  Dkt. No. 39 ("MOL").  Plaintiff filed her opposition on August 2, 2024.  Dkt. No. 42 ("Opposition").  Defendants filed a reply on August 23, 2024.  Dkt. No. 44 ("Reply").  Judge Willis heard oral argument on Defendants' motion on December 13, 2024.  Judge Willis issued a report and recommendation on Defendants' motion on February 8, 2025.  Dkt. No. 62 (the "R&R").

On August 7, 2024, Defendant Just One More Restaurant Corp. ("Just One More") filed a suggestion of bankruptcy.  Dkt. No. 43.  The Court, on February 13, 2025, issued an order noting the automatic stay of this case until such a time as the U.S. Bankruptcy Court for the Middle District of Florida lifted the stay as to Just One More or the remaining defendants, or such a time as the Court ordered the stay lifted as to the remaining defendants.  Dkt. No. 67.  With leave of the bankruptcy court, Plaintiff moved for the voluntary dismissal of Just One More from this action on March 11, 2025.  Dkt. No. 70.  The Court dismissed Just One More and lifted the stay on April 2, 2025.  Dkt. No. 72.

The Court held a conference on the record on April 8, 2025 to discuss the R&R and a schedule for briefing any objections.  Plaintiff and Defendants separately filed objections to the R&R on April 25, 2025.  Dkt. Nos. 75 ("Def. Obj."), 77 ("Pl. Obj.").  The parties filed responses to

---

[1] No party filed objections to the Report & Recommendation's recitation of the alleged facts.

the objections on May 9, 2025.  Dkt. Nos. 78 ("Def. Resp."), 79 ("Pl. Resp.").

### C. The R&R

The R&R first addresses the merits of Defendants' motion to dismiss and then proceeds to analyze whether the Court should compel arbitration.  The R&R concludes that the allegations of events that occurred prior to November 9, 2019 are time barred.  R&R at 8–9.  The R&R also concludes that the FAC fails to state a claim for race-based discrimination under 42 U.S.C. § 1981 because Plaintiff failed to establish "that her race was the but for cause of the adverse employment actions."  R&R at 14.  The R&R does, however, conclude that Plaintiff's retaliation claim and her breach of contract claim were adequately pleaded.  *Id.* at 19–26.  The R&R further concludes that Plaintiff "failed to sufficiently differentiate the breach of the implied covenant claim and the breach of contract claim."  *Id.* at 28.  The R&R therefore recommends granting the motion to dismiss with respect to count one (the discrimination claim) and count four (the breach of the implied covenant of good faith claim) of the FAC.  *Id.* at 31.

The R&R then addresses the arbitrability of Plaintiff's claims.  The R&R finds that "[t]he parties do not dispute that arbitration was originally agreed to or that the instant dispute falls within the scope of the arbitration clause."  *Id.* at 29.  The only dispute is whether "the arbitration clause is unenforceable because both the fee-shifting provision and the requirement that both Parties bear the cost of arbitration are unconscionable."  *Id.* at 30.  The R&R finds "that the fee-shifting provision, as applied to the Plaintiff, is unconscionable and unenforceable due to her financial inability."  *Id.*  However, the R&R recommends "severing the fee-shifting provision and ordering the parties to enter arbitration to resolve the surviving counts."  *Id.* at 31.

### III.  LEGAL STANDARD

#### A. Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

The Court reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). When a party timely objects to a magistrate's report and recommendation, a district court reviews, *de novo*, "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "To the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (citation and internal quotation marks omitted)). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Vega v. Artuz*, No. 97-CV-3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and internal quotation marks omitted). "The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *New York City Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (internal citation and quotation marks omitted).

Finally, "it is established law that a district judge will not consider new arguments raised in

objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (internal citation and quotation marks omitted); *accord Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." (quoting *Syed Mohammad Aftab Kartm, MD, Faans v. New York City Health and Hospitals Corp., et al.*, No. 17-CV-6888, 2020 WL 2999228, at *3 (S.D.N.Y. June 4, 2020))); *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748, at *2 (S.D.N.Y. Sep. 27, 2013) ("[A] party waives any arguments *not* presented to the magistrate judge." (emphasis in original)).

### B. Motion to Compel Arbitration

Under Section 2 of the FAA, as a general matter, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. "There are two types of validity challenges under § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. [A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* (second alteration in original) (internal quotation marks and citation omitted).

The FAA also provides that parties can petition the district court for an order compelling

5

arbitration under 9 U.S.C. § 4. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

9 U.S.C. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding no refusal to arbitrate where respondents had not commenced litigation nor failed to comply with an order to arbitrate).

In order to determine whether an action should be sent to arbitration, courts in this Circuit engage in the following inquiry:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)). "In deciding a motion to compel arbitration, 'the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (quoting *LAIF X SPRL*, 390 F.3d at 198).

"It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate." *Id.* at 567 (citations

6

omitted). "The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "This principle flows inexorably from the fact that arbitration is simply a matter of contract between the parties." *Id.* (quotation and brackets omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (holding that "arbitration is a matter of contract" (quotation omitted)); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (holding that, with respect to an arbitration agreement, "as with any other contract, the parties' intentions control" (quotation omitted)). Hence, "[t]he threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229 (citation omitted).

However, "[t]he Supreme Court has interpreted the FAA broadly, finding a 'liberal federal policy favoring arbitration agreements.'" *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533 (E.D.N.Y. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (brackets omitted). Furthermore, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342–43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its

7

defense." (quotation omitted)). If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (quotation omitted).

## IV. DISCUSSION

The Court declines to adopt the R&R. All of Plaintiff's claims should be arbitrated pursuant to the parties' arbitration agreement, and any dispute as to the enforceability of the arbitration clause's provisions must be resolved by the arbitrator.

### A. The Court Must Address the Motion to Compel Before Reaching the Merits

The Court will not rule on Defendants' motion to dismiss before resolving the question of arbitrability. "Since jurisdiction generally must precede merits in dispositional order, a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Stafa v. Innovative Facility Services*, No. 1:23-cv-10509 (JLR), 2025 WL 27689, at *5 (S.D.N.Y. Jan. 3, 2025) (quoting *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018)); *see also United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allide Indus. and Serv. Workers Loc. 4-5025 v. E.I. DuPont de Nemours & Co.*, 565 F.3d 99, 102 (2d Cir. 2009) ("And in reviewing whether claims are arbitrable, a court is not to rule on the potential merits of the underlying claims even if the union's grievance appears to the court to be frivolous." (cleaned up)). "[B]ecause a motion to compel arbitration goes to the Court's power to hear a case, such a motion is analogous to—and sometimes treated as—a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." *Harris*, 338 F. Supp. 3d at 181. And "[e]ven if the arbitration issue is not considered jurisdictional, it should ordinarily be addressed first as a matter of judicial efficiency." *Id.* at 182. In this case, the Court sees no reason why Defendants should get two bites at the apple by first adjudicating a motion to dismiss before this Court and then, where unsuccessful, trying their

8

luck before the arbitrator. The Second Circuit has stated that the Court should generally not proceed in that manner.

The two cases cited by Defendants do not in fact support the proposition that the Court may "address[] the substance of Plaintiff's allegations before considering whether [P]laintiff should be compelled to arbitrate any remaining claims." Def. Obj. at 9–10. In those cases, the courts found that certain claims were arbitrable and compelled arbitration of those claims, and then the courts ruled substantively on the claims that were not covered by a valid arbitration agreement. *See Govindharajan v. Tata Consultancy Services, Ltd.*, No. 19-cv-10017 (RA), 2020 WL 4016109, at *9 (S.D.N.Y. July 16, 2020) (finding that "Plaintiff has an obligation to bring his NJ CEPA, Title VII, EPA and NJLAD claims against Defendants in arbitration" and then ruling on the claim of "immigration fraud in violation of 18 U.S.C. § 1546"); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 463 (E.D.N.Y. 2009) ("With two exceptions, plaintiffs' claims . . . do not relate to the contract, and thus are non-arbitrable. . . . As discussed further below, the fraud and conversion claims do relate to the contract, and must be arbitrated. Plaintiffs' allegations pertaining to intellectual property and unjust enrichment do not pertain to the contract, and are non-arbitrable.").[2]

### B. Plaintiff's Claims Are Arbitrable

Plaintiff's claims in this case are arbitrable, pursuant to the binding arbitration clause in the parties' employment agreement. The parties do not dispute that Plaintiff's claims fall within the scope of the arbitration clause. Instead, Plaintiff argues that the arbitration clause is unconscionable and that Defendants waived their right to compel arbitration. *See* Opposition at 24; Pl. Obj. at 1, 7.

#### 1. Questions of Unconscionability Must Be Determined by the Arbitrator

Plaintiff's "challenge to the validity of the agreement to arbitrate"—on the basis that the fee-splitting and fee-shifting provisions of the arbitration clause are unconscionable—must be resolved

---

[2] The Court reminds counsel for Defendants of their obligations pursuant to Fed. R. Civ. P. 11.

by the arbitrator.  Opposition at 24.  The arbitration clause provides:

> Any dispute or controversy arising under or in connection with this Agreement or the Executive's employment with the Company, other than injunctive relief under Section 12 hereof, shall be settled exclusively by arbitration, conducted before a single arbitrator in Washington, D. C. in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association then in effect.

Dkt. No. 33-1 § 18.  Rule 7(a) of the American Arbitration Association's Employment/Workplace Arbitration Rules and Mediation Procedures, effective May 1, 2025, https://www.adr.org/sites/default/files/document_repository/2025_Employment_Arbitration_Rules.pdf, provides that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or *validity* of the arbitration agreement or the arbitrability of any claim or counterclaim" (emphasis added).

Therefore, under the rules adopted by the arbitration clause, questions of arbitrability and the validity of the agreement are properly delegated to the arbitrator.  *See DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021) ("Where the parties explicitly incorporate procedural rules that empower an arbitrator to decide issues of arbitrability, that incorporation may serve as clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator."); *Shenzhen Xingchen Xuanyuan Indus. Co. Ltd. v. Amazon.com Services LLC*, 735 F. Supp. 3d 453, 463 (S.D.N.Y. 2024) ("'[T]he parties' adoption of the AAA commercial rules is clear evidence of the parties' intent to delegate issues of arbitrability to the arbitrator.").  Accordingly, "unless [plaintiff] challenged the delegation provision specifically, [the court] must treat it as valid under [9 U.S.C. § 2], and must enforce it under [9 U.S.C. §§ 3, 4], leaving any challenge to the validity of the [a]greement as a whole for the arbitrator."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

Plaintiff has not challenged the delegation provision specifically.  Rather, Plaintiff "argue[s] that arbitration *in general* would be unconscionable."  *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 118 (2d Cir. 2025); *see* Opposition at 24–25; Pl. Obj. at 7–9.  She only raises the financial hardship

10

associated with being "forced to arbitrate her claims," Pl. Obj. at 8, not the financial hardship associated with arbitrating the unconscionability and enforceability of the fee-shifting provisions. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010) ("[T]he unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination."). "Plaintiff[] ha[s] not shown that it would be unfair to defer to an arbitrator on th[ose] question[s]." *Davitashvili*, 131 F.4th at 119. Because Plaintiff "argue[s] that arbitration *in general* would be unconscionable," *Davitashvili*, 131 F.4th at 118, and "did not make any arguments specific to the delegation provision," *Rent-A-Ctr., W.*, 561 U.S. at 74, the Court must enforce the delegation provision and leave it to the arbitrator to resolve the questions of unconscionability.

In any event, it is unlikely that the factual record before this Court is sufficient to find that the fee-shifting, fee-splitting, and forum-selection provisions of the arbitration clause are unconscionable. *See* Pl. Obj. at 7. The question of whether these provisions are unconscionable "should focus on the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Brady v. Williams Capital Group, L.P.*, 928 N.E.2d 383, 387 (N.Y. 2010). Plaintiff admits that she has not "at this juncture" provided non-speculative evidence as to "how much it will cost to arbitrate her claims." Pl. Resp. at 5; *see Senisi v. John Wiley & Sons, Inc.*, No. 13-cv-3314 (LTS) (AJP), 2015 WL 256094, at *5 (S.D.N.Y. Jan. 21, 2015) (declining to invalidate arbitration agreement where the plaintiff made "no showing of what financial burdens she might be forced to bear in arbitration" and instead "simply speculate[d] that the costs to her would be exorbitant").

As to Plaintiff's ability to pay the arbitration fees and costs, the evidence Plaintiff has provided is likely insufficient to determine her "inability to pay for arbitration." *Kai Peng v. Uber*

11

*Techs., Inc.*, 237 F. Supp. 3d 36, 58 (E.D.N.Y. 2017). Plaintiff simply offers evidence that she is a 74-year-old woman with stage-4 cancer who has been unable to find commensurate work since her termination. Dkt. No. 42-1 ¶¶ 2–4. While these facts speak to the "significant medical expenses" that she is incurring, *id.* ¶ 4, they say nothing of the asset side of the ledger. That she has "lost the $300,000 annual salary" that she earned working for Defendants and has therefore been "unable to contribute any money towards [] retirement," *id.* ¶¶ 3, does not mean that she does not have enough income or assets saved up to pay for the arbitration. *See Brady*, 928 N.E.2d at 386 (holding that "the fact that petitioner was unemployed for 18 months at the time this article 78 proceeding was commenced and the amount of her share of the arbitration fees . . . fail to resolve the question whether petitioner was financially able to share the arbitration costs"). That is particularly true in this case, where Plaintiff alleges that she was fired from a job that paid a base salary of $300,000 per year, to which she was recruited from a law firm partnership that she held from 1985 until 2012. FAC ¶¶ 15, 19, 30.

"Instead of providing financial records or other evidence of inability to pay, Plaintiff[] assert[s] in a conclusory fashion that [she is] not able to afford arbitration costs." *Hegazy v. Halal Guys, Inc.*, No. 22-cv-01880 (JHR) (KHP), 2023 WL 8924092, at *7 (S.D.N.Y. Dec. 27, 2023), *adopted in relevant part*, No. 22-cv-1880 (JHR), 2025 WL 1001184 (S.D.N.Y. Apr. 1, 2025). Therefore, the Court is not convinced that, even if the Court had jurisdiction to determine enforceability, Plaintiff has made a sufficient showing that the arbitration clause's provisions are unconscionable as applied to Plaintiff.

### 2. Defendants Have Not Waived Their Right to Arbitrate

Defendants have not waived their right to compel arbitration in this case. As this Court has previously noted, "the Second Circuit's test for waiver of an arbitration agreement is somewhat in flux." *Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-cv-8649 (GHW), 2023 WL 4706126, at *12

(S.D.N.Y. July 21, 2023). After the Supreme Court's ruling in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), there are "two possible post-*Morgan* arbitration waiver tests in this Circuit." *Lawrence*, 2023 WL 4706126, at *12. The first is "the Second Circuit's general test for contractual waiver," which, under New York law, requires "a clear manifestation of an intent . . . to relinquish [a] known right." *Id.* at *12–13 (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006)). The second is "a modified Second Circuit arbitration-waiver test." *Id.* at *14. "After *Morgan*, the remaining elements of that test are '(1) the time elapsed from when litigation was commenced until the request for arbitration; and (2) the amount of litigation to date, including motion practice and discovery.'" *Id.* (quoting *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)). The Second Circuit has yet to clarify which test is proper in light of *Morgan*. *See Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (summary order). The Court need not decide which test is proper for purposes of this opinion because Defendants have not waived their right to arbitrate under either test.

### a. Contractual Waiver Analysis

Under New York contract law, waiver requires "a clear manifestation of an intent . . . to relinquish [a] known right." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006) (internal quotation marks and citation omitted). "Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right." *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 30 (E.D.N.Y. 2009). "But 'waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection.'" *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015) (quoting *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006)). "'[M]ere silence, oversight or thoughtlessness in failing to object' is insufficient to

13

support an inference of waiver." *Id.* (quoting *Courtney–Clarke v. Rizzoli Int'l Publ'ns, Inc.*, 676 N.Y.S.2d 529, 529 (1st Dep't 1998)). "While such a waiver may be express or implied, the intent to waive must be clearly established and cannot 'be inferred from doubtful or equivocal acts or language, and the burden of proof is on the person claiming the waiver of the right.'" *Lockheed Martin Transp. Sec. Sols. v. MTA Cap. Constr. Co.*, No. 09-cv-4077, 2014 WL 12560686, at *22 (S.D.N.Y. Sept. 16, 2014) (quoting *200 E. 87th St. Assocs. v. MTS, Inc.*, 793 F. Supp. 1237, 1251 (S.D.N.Y. 1992)) (internal quotation marks omitted). Waiver may be proven by "undisputed acts or language so inconsistent with [the party's] purpose to stand upon his [or her] rights as to leave no opportunity for a reasonable inference to the contrary." *Kamco Supply Corp. v. On the Right Track, LLC*, 49 N.Y.S. 3d 721, 726 (2d Dep't 2017) (internal citation and quotation marks omitted).

There is no dispute that Defendants never "expressly waive[d] the right to arbitrate." *Herrera v. Manna 2nd Ave. LLC*, No. 1:20-cv-11026 (GHW), 2022 WL 2819072, at *9 (S.D.N.Y. July 18, 2022). Instead, Plaintiff argues that Defendants "engaged in behavior that is inconsistent with any intent to arbitrate" by making "a calculated decision . . . to bring a Fed. R. Civ. P. 12(b)(6) motion" in the alternative to the motion to compel. Pl. Obj. at 2–3.

Defendants first requested leave to file a motion to compel arbitration on February 20, 2024, the day by which Defendants were required to answer or otherwise respond to the complaint. Dkt. No. 24. Plaintiff cannot reasonably argue that Defendants did not "move[] to compel arbitration at the earliest practical time" and therefore promptly evince an intent to invoke their arbitration rights. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 235 (S.D.N.Y. 2020) *objections overruled*, No. 10-cv-6950 (AT) (RWL), 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *see also Lawrence*, 2023 WL 4706126, at *14 ("Defendants sought to hold Plaintiffs to any relevant arbitration agreements at the earliest possible time, and thereafter moved to compel arbitration as soon as could reasonably be expected."). While the choice to bring a motion to dismiss in the alternative may constitute an

14

equivocal act, Defendants clearly stood upon their right to compel arbitration. Moving to dismiss *in the alternative* does not "evince [an] intent to abandon the right" to arbitrate altogether. *Coggins*, 615 F. Supp. 2d at 30.

### b.  Modified Second Circuit Arbitration-Waiver Test

Defendants also did not waive their right to arbitrate under the modified Second Circuit arbitration-waiver test. After *Morgan*, the remaining elements of that test are "(1) the time elapsed from when litigation was commenced until the request for arbitration; and (2) the amount of litigation to date, including motion practice and discovery." *La. Stadium*, 626 F.3d at 159.

The time elapsed between the start of this action and Defendants' request to arbitrate was very short. As discussed above, Defendants first requested leave to file a motion to compel arbitration on the day on which their answer to the complaint was due—even before Plaintiff filed the FAC. Dkt. No. 24. Any "delay or expense" in this action to date is therefore unattributable to the timing of Defendants' "invocation of [their] contractual right to arbitrate." *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997).[3]

The amount of litigation to date is not so extensive as to find that Defendants waived their right to arbitrate. "[T]he parties have yet to even exchange discovery." Pl. Obj. at 4. The Court does not find that filing a motion to dismiss in the alternative—in the same moving papers as the motion to compel—and unsuccessfully requesting leave to file a separate sanctions motion is sufficient to find that there has been extensive pre-trial litigation. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985) (holding that "filing a motion to dismiss" does not "alone . . . waive the

---

[3] The Court notes that Plaintiff did not raise this objection to Defendants' litigation strategy before Judge Willis, *see* Opposition at 23–25, but raised it for the first time in her objections to the R&R, *see* Pl. Obj. at 5 ("The Court should not permit Defendants to deliberately engage in piecemeal litigation by 'picking and choosing' which claims subject to the arbitration provision must be decided by this Court and which ones can be decided by an arbitrator."). Before Judge Willis, Plaintiff instead chose to brief the merits of Defendants' Rule 12(b)(6) motion and challenge arbitration on the sole basis of unconscionability.

right to arbitrate" (citing *Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457, 463 (2d Cir. 1985))); *Murray v. UBS Securities, LLC*, No. 12-cv-5914 (KPF), 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014) (collecting cases that refute the argument that a defendant's "initial decision to file a motion to dismiss is itself a sufficient basis on which to find waiver").[4]  Therefore, the Court does not find that Defendants waived their right to compel arbitration.[5]

## V. CONCLUSION

For the foregoing reasons, the Court declines to adopt the R&R.  Defendants' motion to compel arbitration of Plaintiff's claims is GRANTED.  This action is stayed pending arbitration.  *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").  To the extent that Plaintiff asserts an inability to physically attend or pay the costs of the arbitration, Plaintiff must work to resolve those issues before the arbitrator, who is empowered to decide issues of arbitrability.  The Clerk of Court is directed to note the stay of this matter on the docket.

SO ORDERED.

Dated: May 29, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[4] *Compare La. Stadium*, 626 F.3d at 159 (where the party filed a motion to remove, a motion to transfer, a motion to stay, and a nineteen-page, single-spaced letter regarding a motion to dismiss *before* seeking to arbitrate); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 84 (2d Cir. 1998) (where a party filed a counterclaim, made "extensive discovery requests," and filed motions to dismiss and stay).

[5] Plaintiff's arguments about the prejudice resulting from Defendants' alternative motions and from the resulting delay are not relevant given the U.S. Supreme Court's decision to "not include a prejudice requirement" in arbitration waiver analysis.  *Morgan*, 596 U.S. at 419.